# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| GENESIS S. BENNETT and<br>EVORA K. BENNETT | * * * | |
| Plaintiffs, | * * | |
| vs. | * * | CV 210-181 |
| FLAGSTAR BANK, | * * | |
| Defendant. | * | |

### ORDER

Presently before the Court is Defendant Flagstar Bank's ("Flagstar") Motion to Dismiss. Dkt. No. 11. For the reasons stated below, Flagstar's motion is **GRANTED**.

### BACKGROUND

Genesis and Evora Bennett ("Plaintiffs") filed this action against Flagstar seeking damages and injunctive relief for conduct associated with a mortgage on the Plaintiffs' principal residence. Dkt. No. 1. Flagstar moved to dismiss Plaintiffs' suit, and Plaintiffs filed a response to the motion. Dkt. Nos. 11, 19.

Flagstar issued a mortgage to the Plaintiffs on September 15, 2008 to finance (or possibly refinance) the Plaintiffs' principal residence located at 4241 Old Jesup Road, Brunswick, Georgia. In conjunction with the mortgage, the Plaintiffs granted a security deed on the property to Flagstar. It appears that sometime around December 2009 or January 2010 Flagstar determined that the Plaintiffs were delinquent in making payments on the mortgage.[1] Flagstar contacted Plaintiffs and apparently proposed some sort of agreement regarding loan or payment modification. Dkt. No. 19, Ex. A. It is not clear whether Plaintiffs accepted this proposal, but based on documents submitted by Plaintiffs, it appears that Plaintiffs made payments consistent with the modification suggested by Flagstar. Id. Plaintiffs filed petitions for Chapter 13 bankruptcy on November 4, 2010. In re Genesis Steven Bennett & Evora Kenty Bennett, 10-21472-JSD, Dkt. No. 1.

With regards to the relationship between the parties at the time the suit was filed, the record is particularly sparse. The Court is left only to guess about the status of the mortgage,

---

[1] The Plaintiffs' Complaint contains virtually no facts, historical or otherwise. The Court's assumptions about delinquency and subsequent agreement between the parties are based on a document filed as an exhibit to Plaintiffs' Response and Objection/Rebuttal to Defendant's Motion to Dismiss Plaintiffs' Complaint. Dkt. No. 19, Ex. A. That document is a letter which appears to have been sent from Flagstar to the Plaintiffs. Flagstar has not disputed the veracity of the letter or its contents. The Court considers this letter only as a basis for establishing the background of the dispute; the Court does not consider this letter in deciding whether to dismiss Plaintiffs' Complaint.

AO 72A
(Rev. 8/82)

whether a modification agreement was entered into, or whether foreclosure proceedings have been initiated. At most, the Court can reasonably assume that some falling out between the parties occurred, such that the Plaintiffs felt compelled to initiate this lawsuit against Flagstar.

The Plaintiffs' Complaint attacks Flagstar with passion, if not clarity. Dkt. No. 1. Plaintiffs appear to challenge the amount of payments they were required to make, the methods Flagstar used to collect those payments, and Flagstar's general lending practices. <u>Id.</u> As legal grounds for their Complaint, Plaintiffs cite numerous legal provisions and theories: the Truth in Lending Act, Fraud, Conspiracy, Fair Debt Collections Practices Acts, the Constitution (State and Federal), the Civil Rights Act, the Fair Housing Act, the Equal Credit Opportunity Act, and the Racketeering Influenced and Corrupt Organizations Act. <u>Id.</u>

Flagstar has moved to dismiss Plaintiffs' Complaint on three grounds. Dkt. No. 11. Flagstar argues that the Plaintiffs are not the real party in interest because the Plaintiffs filed for bankruptcy, and therefore the claims, if any, belong to the bankruptcy estate, making the bankruptcy trustee the real party in interest. Additionally, Flagstar argues that the Plaintiffs are judicially estopped from asserting their claims because the Plaintiffs failed to disclose

the claims in their bankruptcy petition and failed to amend their petition to reflect the claims. Flagstar also argues that Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

**I. The Real Party in Interest**

Flagstar moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 17(a)[2] on the grounds that the Plaintiffs are not the real parties in interest. Dkt. No. 11. Flagstar argues that the Plaintiffs filed a bankruptcy petition prior to initiating this lawsuit, and therefore only the bankruptcy trustee can pursue Plaintiffs' claims. Flagstar points to 11 U.S.C. § 541(a) which states that when a debtor files a bankruptcy petition, "all legal or equitable interests of the debtor" become property of the bankruptcy estate.[3] Flagstar further relies on Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1292 (11th Cir. 2003), for the proposition that "the [bankruptcy trustee] is the real party in interest and it has exclusive standing to assert . . . [legal] claims."

---

[2] Fed. R. Civ. P. 17(a) states: "An action must be prosecuted in the name of the real party in interest."

[3] The expression "all legal or equitable interests of the debtor" includes all "legal causes of action the debtor had against others at the commencement of the bankruptcy case." In re J. H. Inv. Servs., Inc., 413 F. App'x 142, 148 (11th Cir. 2011) (quoting In re Icarus Holding, LLC, 391 F.3d 1315, 1319 (11th Cir. 2004)).

Flagstar's reliance on Barger is misguided, and overlooks an important distinction between Barger and the instant case. Barger dealt with a Chapter 7 debtor's standing, not a Chapter 13 debtor's standing. In the years since Barger, there has been some debate about the distinctions between the standing of debtors in Chapter 7 proceedings and debtors in Chapter 13 proceedings. See, e.g., Looney v. Hyundai Motor Mfg. Ala., LLC, 330 F. Supp. 2d 1289 (M.D. Ala. 2004). Although ambiguity about the issue lingers, the majority position appears to be that, unlike a Chapter 7 debtor, a Chapter 13 debtor retains standing to pursue his or her pre-petition claims.[4] See id. (collecting and analyzing cases, ultimately rejecting the argument that the plaintiff, a Chapter 13 debtor, is not the real party in interest, and holding that the debtor retained standing to pursue pre-petition claims); In re Stewart, 373 B.R. 801 (Bankr. S.D. Ga. 2007) (holding that a Chapter 13 debtor had standing to challenge the existence of a settlement between the trustee and a creditor on the basis that a debtor and a trustee have, "at a minimum, concurrent standing."); Snowden v. Fred's Stores of Tenn., Inc., 419 F. Supp. 2d 1367, 1371 n.6 (M.D. Ala. 2006) ("[A] Chapter 13 debtor maintains control over all assets . . .

---

[4] The Court notes that a debtor's pre-petition causes of action unquestionably become property of the estate under 11 U.S.C. § 541(a). See In re Alvarez, 224 F.3d 1273, 1278 n.12. The more unsettled issue is whether the trustee has exclusive standing to pursue those causes of action after they become property of the bankruptcy estate.

and therefore has standing to bring suit in his own right."); see also pre-<u>Barger</u> cases, <u>In re Griner</u>, 240 B.R. 432, 437 (Bankr. S.D. Ala. 1999) ("[I]t is clear that Congress intended to provide chapter 13 trustees and chapter 13 debtors with concurrent capacity to litigate prepetition nonbankruptcy law claims."), and cases from outside the Eleventh Circuit <u>In re Henneghan</u>, 2005 WL 2267185, *6 (Bankr. E.D. Va. June 22, 2005) ("[A] chapter 13 debtor has standing to bring suit on his or her own causes of action.").

Plaintiffs filed this lawsuit then filed a Chapter 13 petition for bankruptcy. Flagstar moved to dismiss on the grounds that the bankruptcy trustee is the real party in interest, not the Plaintiffs, implicitly arguing that the Plaintiffs lack standing to sue on this claim. Because the Plaintiffs filed a Chapter 13 petition, and not a Chapter 7 petition, the Plaintiffs retain standing to pursue the pre-petition causes of action and are consequently the real parties in interest.

## II. Judicial Estoppel

"Judicial estoppel . . . is an equitable doctrine invoked at a court's discretion." <u>Ajaka v. Brooksamerica Mortg. Corp.</u>, 453 F.3d 1339, 1343-44 (11th Cir. 2006) (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750 (2001)). Specifically, judicial

estoppel bars parties from asserting a claim that is inconsistent with a claim asserted in a previous proceeding. Id. The doctrine aims to "prevent perversion of the judicial process," but is a "flexible rule in which courts must take into account all of the circumstances of each case." Id. (citations omitted)(denying summary judgment on the issue of judicial estoppel where defendants had adequate time to seek revocation of plaintiff's Chapter 13 reorganization plan and where there was an issue of material fact as to whether plaintiff intended to manipulate the judicial system).

"In the Eleventh Circuit, courts consider two factors in the application of judicial estoppel to a particular case." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) (citing Salomon Smith Barney, Inc. v. Harvey, M.D., 260 F.3d 1302, 1308 (11th Cir. 2001)). "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Id.

The first factor, whether the Plaintiffs took inconsistent positions in another proceeding, is a simple matter. The Plaintiffs initiated the present lawsuit then filed the bankruptcy petition. In conjunction with their petition, the Plaintiffs signed, under penalty of perjury, a "Statement of

7

Financial Affairs." Paragraph 4 of that Statement mandates that the debtors "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." In re Genesis Steven Bennett & Evora Kenty Bennett, 10-21472-JSD, Dkt. No. 1, at 28. The Plaintiffs checked "None" in response to this paragraph. Id. Clearly, the Plaintiffs took inconsistent positions in the instant suit and in the bankruptcy proceedings.[5]

As is commonly the case, the determination of the applicability of judicial estoppel turns on whether the Plaintiffs had the requisite intent to mislead the bankruptcy court when they failed to disclose the instant suit. In order for Plaintiffs' claims to be barred by judicial estoppel, it must be shown that the Plaintiffs' inconsistent positions were "intentional contradictions," "calculated to make a mockery of the judicial system" and were "not simple error or inadvertence." Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273-75 (11th Cir. 2010). The requisite intent may be inferred from the record. Burnes, 291 F.3d at 1288. Importantly,

---

[5] There is little question that the Plaintiffs were under a continuing duty to amend their petition to disclose the suit as well. See Robinson v. Tyson Foods, Inc., 595 F.3d 1269 (11th Cir. 2010) (holding that a Chapter 13 debtor has an obligation to amend his schedule of assets to reflect claims against third parties and that failure to do so constitutes "inconsistent positions" for the purposes of judicial estoppel). It is, however, unnecessary to delve into the continuing duty issue given that Plaintiffs filed the instant lawsuit *before* filing their bankruptcy petition. The first factor in the judicial estoppel analysis is therefore unambiguously established.

AO 72A
(Rev. 8/82)

failure to properly disclose claims in the bankruptcy proceedings is "'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Robinson, 595 F.3d at 1275.

Flagstar asks the Court to invoke the discretionary doctrine of judicial estoppel, but fails to point to any facts in the record that show that the Plaintiffs intentionally attempted to make a mockery of the judicial system. Rather, Flagstar argues that Plaintiffs knew about their claims prior to filing their bankruptcy petition, and therefore the Plaintiffs should be judicially estopped from asserting those claims. Although intent may be properly inferred from a relatively sparse record, mere knowledge of the existence of claims is not enough to satisfy the second judicial estoppel factor. See, e.g., Robinson, 595 F.3d at 1275 ("It is undisputed that [the debtor] had knowledge of her claims. Therefore, the issue of motive is the determining factor in this case."). Flagstar has not presented any facts to support an inference of motive in the instant case.

Flagstar relies heavily on Robinson, stating "[t]he facts and law in the present case are so similar to Robinson as to demand the same result."[6] However, Robinson is factually

---

[6] The Court also points out that Robinson simply concluded that application of judicial estoppel by the trial court in that case was not clearly erroneous.

distinguishable in several ways: the debtor in Robinson had a history of not disclosing claims in her bankruptcy petition; the Robinson debtor was in her second Chapter 13 bankruptcy plan at the time she took inconsistent positions; the Robinson debtor defaulted on her bankruptcy plan, showing a real risk of no repayment; and finally, the claim at issue in Robinson was an employment discrimination claim, not a mortgage dispute. The court in Robinson emphasized that "[t]he questions regarding repayment coupled with the chance of monetary gain" supported a finding that the debtor had motive to conceal her claims. Id. at 1276. By contrast, there are no facts in the record that indicate that the Plaintiffs will not fully comply with their bankruptcy plan obligations. As such, Flagstar's reliance on Robinson is unavailing. Therefore, Flagstar is not entitled to dismissal of Plaintiffs' Complaint on judicial estoppel grounds.

### III. Dismissal for Failure to State a Claim

Flagstar also moves for dismissal of Plaintiffs' Complaint on the grounds that the Complaint fails to state a claim upon which relief can be granted. Dkt. No. 11.

---

That, however, does not mandate that the same result must occur here, even if some of the facts are similar.

## A. Legal Standard

"A pleading that states a claim for relief must contain . . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Here, Plaintiffs are proceeding *pro se*, and *pro se* pleadings are "to be liberally construed" and held to a "less stringent standard" than those drafted by a lawyer. Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the latitude given to *pro se* litigants does not eliminate the requirement that they conform to procedural rules. Moton v. Cowart, 631 F.3d 1337, 1340 n.2 (11th Cir. 2011).

Where a defendant challenges a complaint for failing to adequately state a claim upon which relief can be granted, the court should apply a "two-pronged approach" in analyzing the complaint. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) in resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)). First, the court should "eliminate any allegations in the complaint that are merely legal conclusions." Id. This first prong excludes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal, 129 S.Ct. at 1940. Second, the court should assume that all well-pleaded factual allegations are true "and then determine whether [those allegations]

plausibly give rise to an entitlement to relief." Am. Dental Ass'n, 605 F.3d at 1290. In determining plausibility, the court should "draw on its experience and common sense." Iqbal, 129 S.Ct. at 1950. Moreover, it is proper for the court to infer " 'obvious alternative explanation[s]' which suggest lawful conduct rather than the unlawful conduct the plaintiff[s] would ask the court to infer." Am. Dental Ass'n, 605 F.3d at 1290 (quoting Iqbal and relying on Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). Ultimately, if the plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

## B. Discussion

Following Iqbal's guidance, it is clear that Plaintiffs have failed to state a claim upon which relief may be granted. The Plaintiffs' Complaint is a essentially a series of legal terms and undeveloped, wholly unsupported accusations, strung together in a stream of consciousness fashion.

Proceeding under the two-pronged approach set forth in Iqbal, the Court first eliminates the "legal conclusions" and "threadbare recitals of the elements of a cause of action" contained in Plaintiffs' Complaint. Iqbal, 129 S.Ct. at 1949. In the instant case, the first step in the Iqbal process basically eliminates the Plaintiffs' entire complaint. For

example, the Plaintiffs claim that Flagstar engaged in "systemic institutionalized racism in sub-prime home Mortgage Lending, in that constitutes predatory Mortgage Lending, of which contrary to the Truth and Lending Act, and in violation of the Fair Housing Act and the Equal Credit Opportunity Act, as well as the Civil Rights Act," but fail to identify even a scintilla of factual support for such claims. Id. ¶ 10. Such a statement, without factual support, is a legal conclusion that the Court must disregard. The remainder of Plaintiffs' Complaint reads basically the same.[7] Even after taking a fine-toothed comb to the Plaintiffs' Complaint, the Court can find almost no factual statement suggesting the slightest wrongdoing by Flagstar.

The sole statement that approaches a factual allegation is contained in Paragraph 9 of the Complaint and states, in relevant part, "all the funds/payments by checks [that Elizabeth Dukay, a Flagstar employee] collected and received for the Defendant Flagstar Bank were unreported, unaccounted and unaudited according to information, belief and personal knowledge." Dkt. No. 1, ¶ 9. The remainder of Paragraph 9

---

[7] See, e.g., Dkt. No. 1, ¶ 5 (accusing Flagstar of collecting "unfair debt mortgage payment"), ¶ 7 (accusing Flagstar of collecting "excessive illegal payments"), ¶ 8 (stating that a loan closing document shows that the "mortgage loan paperwork is Bogus illegal, and contains and constitutes Fraud," but no closing document is attached), ¶ 12 (stating that the Plaintiffs made adequate payments to Flagstar, but that portions of the payments were "extra excessive"), ¶ 13 (stating damages were the result of Flagstar's "bad faith illegal wrongful acts and actions"), ¶ 14 (stating that "conspiracy was . . . carried out through a pattern of racketeering activity"), ¶ 15 (stating Flagstar "conspired to collect and received extra excessive over payments").

AO 72A
(Rev. 8/82)

states that an "Exhibit A," containing copies of the checks, is attached to the Complaint. No exhibit was attached to the Complaint.[8]

Even giving the Plaintiffs the utmost leeway as *pro se* litigants, and engaging in truly liberal construction, the Court holds that Plaintiffs' statement in Paragraph 9 still falls short of asserting a plausible factual allegation. Drawing all inferences in the Plaintiffs' favor, the statement essentially says: Plaintiffs made payments to Flagstar, and Flagstar failed to credit those payments to Plaintiffs' account. The statement contains no details about the payments that Plaintiffs allege were not credited, such as the amount or number of the unreported payments.[9] This allegation is purely conclusory, and therefore, under Iqbal, should be disregarded. The Court does not reject the claim in Paragraph 9 because it is "unrealistic or nonsensical" or because the claim is "too chimerical to be

---

[8] The Plaintiffs attached copies of several checks payable to Flagstar as an exhibit to a later filing. Dkt. No. 19, Ex. A. Presumably, these are the same checks the Plaintiffs intended to attach as Exhibit A to their Complaint. The Court does not consider the checks in resolving Flagstar's Motion to Dismiss, given that the documents were not properly attached as exhibits to the Complaint. However, the Court emphasizes that even if the checks had been properly attached to the Complaint the outcome would be the same. At most, the checks demonstrate that Plaintiffs made certain payments to Flagstar, a fact Plaintiffs plainly assert in their Complaint, which consequently is presumed as true when evaluating Flagstar's Motion to Dismiss. Further proof of payments would provide no additional benefit to Plaintiffs.

[9] Most importantly, the Plaintiffs fail to explain the basis for their belief that the payments were not credited to their account. For example, the Plaintiffs could have pointed to a billing discrepancy or a verbal statement by a Flagstar representative disputing that Plaintiffs had made the payments. The Plaintiffs have done nothing of the sort.

14

maintained"; the Court rejects the claim because it is entirely lacking in factual detail, embodying the concept of a "conclusory" allegation. Iqbal, 129 S.Ct. at 1951.

Aside from the brief mention of "unreported, unaccounted, and unaudited" payments, the only factual allegations that remain after elimination of the Complaint's legal conclusions are as follows: (1) the Plaintiffs had a mortgage with Flagstar, (2) Plaintiffs paid certain mortgage payments to Flagstar, and (3) Plaintiffs are unhappy with the terms of the relationship with Flagstar. Beyond these few innocuous facts, Plaintiffs' Complaint is a repetitive, conclusory assertion that Flagstar acted unlawfully. As such, it is unnecessary for the Court to proceed to the second prong of Iqbal, determining the plausibility of the allegations.

Plaintiffs have done precisely what Iqbal prohibits: stated an "unadorned, the-defendant-unlawfully-harmed-me accusation" built on "labels and conclusions." Iqbal, 129 S.Ct. at 1949. Plaintiffs' Complaint is utterly devoid of factual support and therefore the Complaint is dismissed for failure to state a claim on which relief can be granted.

**CONCLUSION**

For the reasons stated above, Defendant Flagstar's Motion to Dismiss is **GRANTED**. The Clerk is directed to close the case and **ENTER FINAL JUDGMENT** in favor of Defendant on all claims.

**SO ORDERED**, this 8th day of December, 2011.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)